IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.    )<br>)<br>SHRONDA COVINGTON, )<br>TONYA FARLEY, )<br>    and )<br>YOLANDA BLACKWELL, )<br>    Defendants. )<br>_____) | Criminal Case No. 3:23cr68 (RCY) |

**MEMORANDUM OPINION**

This prosecution arises out of the death of an inmate in a federal prison. The matter is presently before the Court on two motions to sever, one by Defendant Tonya Farley ("Defendant Farley" or "Ms. Farley"), ECF No. 57, and one by Defendant Shronda Covington ("Defendant Covington" or "Ms. Covington"), ECF No. 101. Ms. Farley and Ms. Covington ask this Court to sever their respective trials from the trials of their co-defendants. Because the Court concludes that all three defendants in this matter were properly joined, and because Ms. Farley and Ms. Covington have not demonstrated any serious risk that a joint trial would compromise any specific trial right or prevent the jury from making a reliable judgment about guilt or innocence, the Court will deny both motions.

**I. FACTUAL BACKGROUND**[1]

Defendants Shronda Covington, Tonya Farley, and Yolanda Blackwell were officials with the federal Bureau of Prisons ("BOP"). On January 9, 2021, an inmate ("W.W.") at the prison where the Defendants worked began acting erratically. Over the course of January 9, W.W. fell

---

[1] These facts are drawn from the pleadings on the instant motions and other motions; the Court lays them out in a neutral manner.

repeatedly.  At approximately 9:30 p.m. on January 9, W.W. was placed in a suicide watch cell.  W.W. continued to fall through the rest of January 9 and into January 10, until he fell to the ground for the final time at 6:30 a.m. on January 10.  W.W. died sometime between 6:30 a.m. and 8:07 a.m. on January 10.  Medical examiners determined that the cause of death was blunt force trauma.

All three defendants in this case were BOP officials responsible for W.W.'s care at the prison during distinct shifts over the two-day period of his medical episode and death.  Defendant Shronda Covington was a lieutenant and the highest-ranking officer at the prison from midnight to 8:00 a.m. on January 9; Defendant Tonya Farley was a registered nurse who worked from approximately 11:00 a.m. to 9:00 p.m. on January 9; and Defendant Yolanda Blackwell was the control officer who worked from midnight to 8:00 a.m. on January 10.

## II. PROCEDURAL HISTORY

On August 1, 2023, a federal grand jury returned a six-count superseding indictment against the Defendants.  *See generally* Superseding Indictment, ECF No. 34.  The Superseding Indictment charges each with violating 18 U.S.C. § 242 by, while acting under color of law as BOP officials, willfully violating the constitutional rights of inmate W.W. by demonstrating deliberate indifference to his serious medical needs.  *Id.* at 2–4.  The Superseding Indictment further charges Ms. Covington and Ms. Farley with violating 18 U.S.C. § 1001 by making materially false statements to federal agents.  *Id.* at 5–6.  The Superseding Indictment also charges Ms. Farley with violating 18 U.S.C. § 1519 by knowingly making a false entry into an official report following her medical assessment of W.W., with the intent to obstruct a federal investigation.  *Id.* at 4.

On August 31, 2023, Ms. Farley filed her Motion to Sever, ECF No. 57 ("Def. Farley's Mot. Sever").  The Government filed its Response in opposition on September 14, 2023, ECF No. 66 ("Gov't's First Resp.").  On November 13, 2023, Ms. Covington filed her Motion to Sever,

ECF No. 101 ("Def. Covington's Mot. Sever").  Three days later, Ms. Farley filed a Motion to Adopt Ms. Covington's motion, ECF No. 107, which the Court granted, *see* ECF No. 110.  The Government filed its Response in opposition to Ms. Covington's motion on November 27, 2023, ECF No. 113 ("Gov't's Second Resp.").  The Court heard argument on January 22, 2024, *see* ECF No. 127, and this opinion follows.

### III. LEGAL STANDARD

#### A. Joinder of Defendants — Rule 8(b)

Federal Rule of Criminal Procedure 8(b) permits joinder of defendants.  An indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).

Separate acts constituting separate offenses are within the "same series of acts or transactions" for Rule 8(b) purposes if they are "unified by some substantial identity of facts or participants."  *United States v. Haney*, 914 F.2d 602, 606 (4th Cir. 1990) (quoting *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987)).  The Fourth Circuit has explained that Rule 8's requirements are not "onerous" and that "Rule 8 permits very broad joinder."  *United States v. Cannady*, 924 F.3d 94, 102 (4th Cir. 2019).

#### B. Relief from Prejudicial Joinder — Rule 14(a)

Federal Rule of Criminal Procedure 14 provides for relief from prejudicial joinder.  "If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials . . . ."  Fed. R. Crim. P. 14(a).

A defendant "faces an uphill battle in [a] severance argument.  A defendant seeking severance pursuant to Rule 14 'has the burden of demonstrating a strong showing of prejudice.'"  *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008) (quoting *United States v. Goldman*, 750

F.2d 1221, 1225 (4th Cir. 1984)).  In other words, a defendant "bears the burden of showing that a joint trial would be so unfairly prejudicial that a miscarriage of justice would result."  *United States v. Williams*, 10 F.3d 1070, 1080 (4th Cir. 1993).  "In determining whether to grant a Rule 14 motion, the court must balance potential prejudice of the defendants against judicial economic interests."  *United States v. Cerritos*, 180 F. Supp. 3d 432, 436 (E.D. Va. 2016) (citing *United States v. Stratton*, 649 F.2d 1066 (5th Cir. 1981)).

"The Supreme Court has indicated that '[t]here is a preference in the federal system for joint trials of defendants who are indicted together.'"  *United States v. Najjar*, 300 F.3d 466, 473 (4th Cir. 2002) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).  This preference exists as both a matter of judicial economy and of fairness to defendants:

> It would impair both the efficiency and the fairness of the criminal justice system to require that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*Richardson v. Marsh*, 481 U.S. 200, 210 (1987); *see also United States v. Hickson*, 506 F. App'x 227, 234 (4th Cir. 2013) ("Th[e] preference [for joint trials] exists because '[j]oint trials are more efficient, and "generally serve the interests of justice by avoiding the . . . inequity of inconsistent verdicts."'" (quoting *United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012)); *United States v. Lane*, 474 U.S. 438, 449 (1986) ("[J]oint trials conserve . . . funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." (internal quotation marks omitted)).

Due to this preference, "when an indictment properly has joined two or more defendants under the provisions of Rule 8(b), severance pursuant to Rule 14 is rarely granted."  *Richardson*, 481 U.S. at 210; *see also United States v. Rusher*, 966 F.2d 868, 877 (4th Cir. 1992) ("Barring special circumstances, . . . the general rule is that defendants indicted together should be tried

together for the sake of judicial economy." (internal quotation marks omitted)). "Accordingly, severance under Rule 14 is only warranted when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Najjar*, 300 F.3d at 473 (quoting *Zafiro*, 506 U.S. at 539). "The defendant must 'establish that actual prejudice would result from a joint trial, . . . and not merely that a separate trial would offer a better chance of acquittal.'" *Id.* (quoting *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995)); *see also United States v. Strickland*, 245 F.3d 368, 384 (4th Cir. 2001) ("A defendant is not entitled to severance merely because separate trials would more likely result in acquittal, or because the evidence against one defendant is not as strong as that against the other."). "When the potential for prejudice is raised by a defendant seeking a separate trial, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Cerritos*, 180 F. Supp. 3d at 436 (quoting *Zafiro*, 506 U.S. at 539).

## IV. DISCUSSION

Defendants Covington and Farley argue that they were improperly joined under Rule 8. Alternatively, they argue that if joinder was proper, that the Court should nevertheless sever their trials pursuant to Rule 14. On both scores, the Court disagrees.

**A. Joinder of the Co-Defendants Was Proper Under Rule 8(b)**

Defendant Covington argues that she was improperly joined with her co-defendants because her acts giving rise to her 18 U.S.C. § 242 charge do not constitute the "same series of acts or transactions" as those of her co-defendants under Rule 8(b). *See* Def. Covington's Mot. Sever 6–7, ECF No. 101. Defendant Farley takes the same position. *See* Mot. Adopt, ECF No. 107. The Government counters that joinder under Rule 8(b) was proper because all three defendants' actions—and thus, the counts—are connected by common facts and participants and

5

were all close in time and space. *See* Gov't's Second Resp. 4–7, ECF No. 113. Applying the Fourth Circuit's broad joinder principles, the Court sides with the Government.

Defendants' § 242 charges are "unified by some substantial identity of facts or participants," and thus are "in the same series of acts or transactions" for Rule 8(b) purposes. *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987). Here, all three defendants are charged with the exact same crime against the exact same victim. All three defendants worked as BOP officials and are alleged to have exhibited deliberate indifference to the same inmate's serious medical needs. The alleged offenses occurred in the same place and occurred close in time—within hours of one another. And under analogous circumstances, other federal courts have held that joinder is proper under Rule 8(b). *See, e.g.*, *United States v. Pizarro*, No. 19-2391, 2023 WL 3332539, at *2 (2d Cir. May 10, 2023) (finding joinder proper "because the crimes shared the same victim and location and occurred sufficiently close in time so that 'a reasonable person would easily recognize the common factual elements that permit joinder'" (quoting *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003)); *United States v. Young*, 2014 WL 4925255, at *1 (D.S.D. Sept. 30, 2014) (finding joinder proper where "each count of the indictment involves the same or similar crimes allegedly committed against the same victim in the same town within a narrow period of time" even though the defendants were charged in separate counts and were not charged with aiding and abetting one another).

Although the three defendants' shifts did not overlap, Rule 8(b) includes no contemporaneity requirement. *See* Fed. R. Crim. P. 8(b). To the contrary, the Fourth Circuit has defined "transaction" in Rule 8(b) "very flexibly" in the temporal sense, and specifically "as 'implying a connection of logical relationship rather than immediateness.'" *United States v. LaRouche*, 896 F.2d 815, 830 n.5 (4th Cir. 1990) (quoting *United States v. Carmichael*, 685 F.2d 903, 910 (4th Cir. 1982))). The Court concludes that the closeness in time in this case,

6

accompanied by the overlapping victim and overlapping nature and location of the alleged crimes, tethers that "logical relationship" between these § 242 counts to support joinder under Rule 8(b).

To the extent that Defendants Farley and Covington argue that joinder was improper because there is no conspiracy charge, *see* Def. Covington's Mot. Sever 6–7 ("There is no legitimate suggestion that these ladies got together and conspired or schemed to deprive W.W. of his constitutional rights."), that argument is rejected. "Rule 8(b) does not require a common goal or conspiracy." *United States v. Ferrarini*, 9 F. Supp. 2d 284, 292 (S.D.N.Y. 1998); *accord United States v. Haney*, 914 F.2d 602, 606 (4th Cir. 1990) (finding co-defendants properly joined under Rule 8(b) despite lack of conspiracy charge). Rather, Rule 8(b) requires that counts be connected "by some substantial identity of facts or participants." *Haney*, 914 F.2d at 606. That connection is present here.

In a similar, but distinct, vein, it does not change the outcome that the three defendants' § 242 charges are separate. Rule 8(b) "permits the joinder of defendants who have participated in the same unlawful act or in the same series of unlawful acts and that the defendants may be charged together or separately and all of them need not be charged in each count." *Wiley v. United States*, 277 F.2d 820, 824 (4th Cir. 1960); *accord United States v. Leach*, 429 F.2d 956, 960 (8th Cir. 1970) ("Where conduct upon which each of the counts is based is part of a factually related transaction or series of events in which all defendants participated, charges may be properly joined although various offenses were distinct and defendants were not charged on each count or guilty of the same offenses."). Here, the three defendants have participated in the same series of (alleged) unlawful acts or transactions for Rule 8(b) purposes in the form of their alleged consecutive failures to provide adequate medical care to W.W. at FCI Petersburg over the course of January 9 and 10. The separate counts are of no moment.

Defendant Covington is entirely correct that "the government cannot accuse [her] of not appropriately responding to events that occurred long after her shift ended, she had left the facility, and that she had no knowledge of and had no duty to respond to." Def. Covington's Mot. Sever 7. But that does not, as she contends, disprove the "logical relationship" between the three defendants' alleged crimes as to the joinder question. *Cf. id.* This argument is a forceful one to present to the jury on the issue of her criminal liability—that the jury ought to consider the fact that Defendant Covington was not present at FCI Petersburg for a large portion of the ordeal. And, to be sure, the Court will instruct the jury to hold the Government to its burden to show that: *each* of the defendants had a duty to ensure that W.W. received care for his apparent serious medical needs; *each* official violated her duty to do so; *each* official's violation amounted to deliberate indifference to medical needs under the applicable caselaw; and *each* official's deliberate indifference resulted in W.W.'s bodily injury and death. *See* 18 U.S.C. § 242; U.S. Const. amend. VIII, *construed in Estelle v. Gamble*, 429 U.S. 97 (1976). But the Court does not view this temporal argument as a proper basis to conclude that Rule 8(b) is not satisfied, given the substantial overlap of facts and participants in these specific circumstances.

For these reasons, the Court concludes that joinder of the three Defendants was proper under Rule 8(b).

**B. Defendants Farley and Covington Do Not Show Entitlement to Rule 14 Relief**

The Court is presented with four arguments as to why, even though joinder is proper under Rule 8(b), the Court should nevertheless sever this case under Rule 14. First, Defendant Covington, joined by Defendant Farley, argues that severance is required because certain evidence anticipated from the Government—specifically, the 12-hour suicide watch video, the inmate suicide watch logs, and anticipated suicide watch testimony—is irrelevant and unfairly prejudicial and, as such, will compromise the jury's ability to make a reliable judgment on their guilt or

8

innocence. *See* Def. Covington's Mot. Sever. 9–13. The remaining three arguments are presented by Defendant Farley alone. First, she argues that she is entitled to severance because she and her co-defendants have irreconcilable defenses that create a risk of undue prejudice. *See* Def. Farley's Mot. Sever 3–5, ECF No. 57. Second, she contends that the rationale undergirding the strong federal preference for a joint trial holds less weight in this case because there are no conspiracy charges tying her and her co-defendants together. *See id.* at 5. Third, she argues that judicial economic interests supporting a joint trial in this matter are not as weighty because the evidence and legal standards in her case and that of her co-defendants are different because she is a medical professional, and her co-defendants are not. *See id.* On all four arguments, the Government disagrees. *See generally* Gov't's First Resp., ECF No. 66; Gov't's Second Resp., ECF No. 107. The Court does so as well.

   1. <u>Evidence of W.W. in Suicide Watch Provides No Basis for Severance</u>

The Court begins with, and quickly disposes of, the sole argument applicable to both Defendant Covington and Farley—the suicide watch evidence argument. Defendants Covington and Farley argue that evidence of W.W. in suicide watch is inadmissible (as to them) as irrelevant and unfairly prejudicial because they were not at the prison for the entirety of the time W.W. was in the suicide watch cell. *See* Def. Covington's Mot. Sever 9–13. Building on this premise, they argue that the jury "will not be able to compartmentalize the admissible and inadmissible evidence" and that limiting instructions will be insufficient to ensure Defendants Covington and Farley receive a fair trial "given that the vast majority of evidence presented at a joint trial will be irrelevant and unfairly prejudicial." *Id.* at 11, 14.

The Court has already carefully considered and rejected the Defendants' relevance and prejudice arguments—the embedded premise in the instant Rule 14 argument—in disposing of Defendant Covington's "Motion in Limine to Exclude All Evidence Related to W.W.'s Time in

Suicide Watch," filed at ECF No. 102. The Court held that this evidence is relevant and not substantially outweighed by any risk of unfair prejudice in Defendant Covington's and Farley's cases. As the legal predicate on which this severance argument is built fails, so does the severance argument itself.[2]

2. The Anticipated Antagonistic Defenses Do Not Justify Severance

Defendant Farley argues that a joint trial will prejudice her because she anticipates that she and her co-defendants will have antagonistic defenses. *See* Def. Farley's Mot. Sever 3–5. The Court cannot conclude that this entitles her to severance.

As the Fourth Circuit has repeatedly explained, "[a] defendant is not entitled to severance merely because his defense conflicts with or is antagonistic to a codefendant's defense." *United States v. Allen*, 491 F.3d 178, 189 (4th Cir. 2007) (citing *Zafiro*, 506 U.S. at 538; and citing *United States v. Najjar*, 300 F.3d 466, 474 (4th Cir. 2002)). "This is true, even where one defendant desires to exculpate himself by inculpating a codefendant." *Id.* (citing *Najjar*, 300 F.3d at 474); *see United States v. Dinkins*, 691 F.3d 358, 369 (4th Cir. 2012) ("Hostility among defendants, and even a defendant's desire to exculpate himself by inculpating others, do not of themselves qualify as sufficient grounds to require separate trials."). Meeting the high burden to justify severance on an antagonistic defense theory

> requires more than finger pointing. There must be such a sharp contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other, or that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.

*Najjar*, 300 F.3d at 474 (internal quotation marks and citations omitted). "This contrast is satisfied

---

[2] Alternatively, Defendants Covington and Farley request that "the Court give a limiting instruction to the jury that the suicide watch evidence should not be considered against [them] before each piece of evidence is submitted." Def. Covington's Mot. Sever 15. But because this request is again premised on the assumption that this evidence is inadmissible as to these two defendants, the Court rejects the request at this stage.

where a defendant's guilt is dictated by the asserted innocence of the codefendants." *Allen*, 491 F.3d at 189 (internal quotation marks omitted).

Defendant Farley insists that the defenses of her co-defendants "will reduce the Government's burden against [her], effectively resulting in a 'second [and third] prosecutor' against [her]." Def. Farley's Mot. Sever 3 (quoting *Zafiro*, 506 U.S. at 543–44 (Stevens, J., concurring)). This is so, in the Defendant's view, because her co-defendants "are likely to present defenses blaming the alleged malfunctions at the prison with regard to [W.W.] as the fault of the medical team," *id.* at 3–4, and the Defendant will be presenting a defense that will shift the blame back toward her co-defendants, *id.* at 4 (outlining her plan to argue that "that the responsibility for protecting [W.W.] did not fall on her," but rather on the "inmates and corrections staff" who observed him in suicide watch).

This is precisely the mere "finger pointing" that does not suffice to establish the requisite strong showing of prejudice necessary to justify severance. *See, e.g.*, *Najjar*, 300 F.3d at 474. Even if Defendant Farley's co-defendants successfully escaped liability by blaming the medical team, that does not logically require the jury to find Defendant Farley guilty on the 18 U.S.C. § 242 charge. On this charge, the Government must prove, among other things, that *each* of the defendants knew about W.W.'s serious medical needs, that *each* defendant was deliberately indifferent to those needs (which includes subjectively *knowing* that their actions or inactions were insufficient to help W.W.), and that *each* defendant's conduct or omission resulted in W.W.'s bodily injury and death. *See* 18 U.S.C. § 242; U.S. Const. amend. VIII, *construed in Estelle*, 429 U.S. 97; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Say, for example, that the jury acquitted Defendants Covington and Blackwell because they successfully argued that they did not know that their acts or omissions were insufficient to help W.W. because they thought they could defer to the medical team. That does not mean that

the jury would *have* to find Defendant Farley guilty of deliberate indifference to W.W.'s medical needs. In theory, she too could have not subjectively known that her acts were not enough to help W.W. She even could have not known that W.W. had a serious medical need to begin with. More fundamentally, as a factual matter, Defendant Farley's co-defendants cannot specifically blame her in their defenses because it is undisputed that "none of the three defendants so much as interacted with another defendant during W.W.'s ordeal." Gov't's First Resp. 11; *see also* Def. Covington's Mot. Sever 6 ("Ms. Covington did not even speak to Ms. Farley or Ms. Blackwell about W.W. on January 9, 2021."). Thus, even if Defendants Covington and Blackwell made the defense that Defendant Farley portends, Defendant Farley's guilt is not "dictated by the asserted innocence of [either of] the codefendants" in this case. *See Allen*, 491 F.3d at 189 (internal quotation marks omitted).

For the same reasons, Defendant Farley's assertion that her defense and the defenses of her co-defendants are so at odds that "the jury will unjustifiably infer that this conflict alone demonstrates that [all defendants] are guilty" fails. Mot. Sever 3 (quoting *United States v. Becker*, 585 F.2d 703, 707 (4th Cir. 1978)); *id.* at 5. Again, the Government will have to prove beyond a reasonable doubt that *each* defendant deprived W.W. of his civil rights beyond a reasonable doubt. Additionally, Defendant Farley also faces charges for alleged false entries in a report that she made—which have nothing to do with either of her co-defendants—and those false statements may go to the willfulness of her allegedly depriving W.W. of his civil rights. Defendant Farley has thus failed to identify any actual, necessary "conflict" as it pertains to her and her co-defendants' criminal liability, let alone a conflict that will inevitably lead a jury to "unjustifiably infer that this conflict *alone* demonstrates that [she is] guilty" of the charges in this case. *Becker*, 585 F.2d at 707 (emphasis added). This is thus no basis to sever Defendant Farley's case either.

To the extent that there is any risk of prejudice by any conflict in defenses, however, the Court will cure such conflict and prejudice by issuing limiting instructions. *See Zafiro*, 506 U.S. at 539 ("When the risk of prejudice is high, . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."); *id.* at 540–41 ("[J]uries are presumed to follow their instructions." (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987))); *see also id.* at 544 (Stevens, J., concurring) ("[T]he Court is surely correct that . . . risk may be minimized by careful instructions insisting on separate consideration of the evidence as to each codefendant . . . ."); *United States v. Stone*, 85 F. App'x 925, 930 (4th Cir. 2004) ("'No prejudice exists if the jury' can 'make individual guilt determinations by following the court's cautionary instructions' and 'appraising the independent evidence against each defendant.'" (quoting *Porter*, 821 F.2d at 972)).

Defendant Farley has not persuaded the Court that there is any uncurable risk of prejudice arising out of any anticipated antagonistic defenses that requires severance in this case.

3. <u>The Lack of a Conspiracy Charge Does Not Alter the Preference for a Joint Trial</u>

Defendant Farley next argues that "the interests of simplicity and efficiency are less persuasive here" because "the defendants do not share conspiracy or complicity allegations" in this case. Mot. Sever 5; *see also id.* (arguing that "many of the customary arguments raised to join defendants at trial are not presented here" because "there are no conspiracy charges tying the defendants together, nor are there allegations that one defendant aided or abetted another"). The Court again disagrees.

It is true "that severance usually is not granted when there was a criminal conspiracy among the defendants. However, this does not mean that severance is required or even preferred when no conspiracy has been charged." *Haney*, 914 F.2d at 606. To the contrary, the strong federal preference in a joint trial remains, *see, e.g.*, *Najjar*, 300 F.3d at 473, and "[b]arring special circumstances, . . . the general rule is that defendants indicted together should be tried together for

13

the sake of judicial economy," *United States v. Rusher*, 966 F.2d 868, 877 (4th Cir. 1992) (internal quotation marks omitted). In other words, the lack of a conspiracy charge does not alter the legal standard—"Rule 14 still requires a showing of prejudice" sufficient to justify severance. *See Haney*, 914 F.2d at 606.

Applying the well-established Rule 14 standards here, Defendant Farley's argument fails. The federal preference for a joint trial exists, among other reasons, "because [j]oint trials are more efficient," *Hickson*, 506 F. App'x at 234 (internal quotation marks omitted) (quoting *Dinkins*, 691 F.3d at 368), and this rationale applies with just as strong force in non-conspiracy cases, *see Haney*, 914 F.2d at 606. In the absence of any strong, uncurable prejudice established by the Defendant, the Court cannot find that the lack of a conspiracy charge alone justifies the drastic measure of severance. *See Haney*, 914 F.2d at 606.

    4.   <u>Severance Would Require the Duplication of Efforts and Impair Efficiency</u>

Finally, Defendant Farley argues that "[t]rying the defendants in separate trials would not require duplication of these efforts because there are separate presentations of evidence, expert requirements, and legal standards required for Ms. Farley, as a medical provider, as compared with the co-defendants, who were not." Mot. Sever 5; *see also id.* (arguing that "the allegations of medical concerns are separate and distinct from the other correctional officer allegations"). This argument fails too.

To repeat, the federal system overwhelmingly prefers joint trials. *See, e.g.*, *Zafiro*, 506 U.S. at 357. This is in large part due to evidence-related concerns. First, it makes little sense "to require that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying." *Richardson*, 481 U.S. at 210. Also, "[i]n joint trials, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials." *Buchanan v. Kentucky*,

14

483 U.S. 402, 418 (1987). This may allow the jury "to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant[.]" *Id.*

On Defendant Farley's presentation of evidence argument, the Court observes that her assertion that the evidence is different as to each co-defendant is wholly conclusory; she does not give any examples or provide further explanation to show why there is no evidentiary overlap. *See generally* Mot. Sever. 5. To the contrary, it appears that the evidence as to the co-defendants in this matter is largely the same. *See* Gov't's First Resp. 7 (arguing as much, pointing to the overlap in "testimony of numerous BOP officers, supervisors, and inmates, as well as BOP records related to W.W.'s demise and the training and policies of its officials"). After all, this is a criminal prosecution of three BOP officials who worked at the *same* prison who are alleged to have demonstrated deliberate indifference to the *same* inmate's medical needs in successive shifts. But even if there is some difference in evidence at the margins, the ability of the jury to "obtain a more complete view of all the acts underlying the charges than would be possible in separate trials," *Buchanan*, 483 U.S. at 418, is something that supports the "strong preference for trying defendants who are indicted together in joint trials," *United States v. Lighty*, 616 F.3d 321, 350 (4th Cir. 2010) (citing *Buchanan*, 483 U.S. at 418). *See United States v. Verges*, 997 F. Supp. 2d 398, 403 (E.D. Va. 2014) (understanding the Supreme Court to have "endorsed th[is] notion" in *Buchanan*).

The Defendant's legal standard argument fares no better. For the 18 U.S.C. § 242 count, the Government will have to prove the same four elements as to each defendant. Defendant Farley is incorrect when she asserts that legal standards are different for her and for her co-defendants.

In sum, judicial economic interests heavily weigh against severing Defendant Farley's case. Contrary to the Defendant's assertions, multiple trials against Defendant Farley and her co-defendants would require duplicative presentations of much of the same evidence from most of the same witnesses and would involve the same legal standards. In other words, none of the

15

Defendant Farley's arguments establish a valid basis for the Court to depart from "the general rule . . . that defendants indicted together should be tried together for the sake of judicial economy." *Rusher*, 966 F.2d at 877 (internal quotation marks omitted).

## V. CONCLUSION

The contested, joined charges in this case are unified by a substantial identity of facts and participants, making joinder of these three defendants proper under Rule 8(b). With joinder proper, Defendants Covington and Farley fail to meet their heavy burden to demonstrate a strong showing of prejudice to justify severance under Rule 14. The balance of the risk of prejudice (which, with the assistance of limiting instructions, is at most negligible) and the judicial economic interests (which here are weighty) do not support severance. There is no justifiable basis for the Court to sever the trials of these Defendants and randomly assign one co-defendant the misfortune of going first, permitting the latter two the opportunity to learn from that co-defendant's mistakes or successes at trial, and further randomly giving one co-defendant the gift of seeing the same trial twice to best shore-up their defense. The Court thus concludes that it cannot grant the instant motions to sever.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: February 20, 2024