IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 3:23CR68-1 (RCY) |
| | ) | |
| SHRONDA COVINGTON, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This prosecution arose following the death of an inmate ("W.W.") in federal prison.  At the conclusion of an eleven-day trial, the jury found Defendant Shronda Covington and one of her two co-defendants guilty of various charged offenses.  The matter is presently before the Court on Ms. Covington's Renewed Motion for Judgment of Acquittal (ECF No. 346).  Ms. Covington seeks a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the Government did not present sufficient evidence for a jury to find her guilty of Counts One (18 U.S.C. § 242) and Six (18 U.S.C. § 1001), and that the Court erred in formulating three of its jury instructions.  For the reasons stated below, the Court denies the Motion.[1]

## I. RELEVANT BACKGROUND

On August 1, 2023, the grand jury issued a six-count Superseding Indictment specifically charging Ms. Covington with one count of deprivation of rights under color of law resulting in bodily injury and/or death, in violation of 18 U.S.C. § 242 (Count One) and one count of making false statements, in violation of 18 U.S.C. § 1001 (Count Six).  Superseding Indictment, ECF No. 34.  Ms. Covington and her two co-defendants proceeded to trial on December 9, 2024.  During

---

[1] On May 5, 2025, the Court entered an Order denying the Motion and promising an opinion to follow.  Order, ECF No. 396.  This Memorandum Opinion fulfills that promise.

trial, Ms. Covington moved for a judgment of acquittal after the prosecutor's case-in-chief and at the close of evidence. The Court denied both motions. On December 21, 2024, the jury returned a verdict finding Ms. Covington guilty of deprivation of rights resulting in bodily injury, but not death (Count One) and of making false statements (Count Six). Verdict Form, ECF No. 313.

On March 17, 2025, Ms. Covington timely filed her Renewed Motion for Judgment of Acquittal ("Motion for Acquittal"). Mot. Acquit., ECF No. 346. The Government responded on March 28, 2025, ECF No. 354, and Ms. Covington replied on April 3, 2025. ECF No. 365.

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 29 ("Rule 29") provides in relevant part that, "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). A court must "sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by 'substantial evidence.'" *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (quoting *Burgos*, 94 F.3d at 862). A court should consider "circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). "[C]ircumstantial evidence is not inherently less valuable or less probative than direct evidence and may alone support a guilty verdict." *United States v. Martin*, 523 F.3d 281, 289 (4th Cir. 2008) (internal quotation marks and citation omitted).

## III. ANALYSIS

The ultimate question before the Court is whether a jury could find that Ms. Covington's conduct deprived W.W. of his rights under color of law, in violation of 18 U.S.C. § 242 (Count One), and whether Ms. Covington made false statements, in violation of 18 U.S.C. § 1001 (Count Six). Specifically, Ms. Covington argues the Court should enter a judgment of acquittal on Counts One and Six because the Government failed to present sufficient evidence to prove either count beyond a reasonable doubt. *See* Mot. Acquit. 7, 21. Specific to Count One, Ms. Covington also argues that the Court erred by failing to instruct the jury using three of her requested instructions: hindsight, proximate cause, and willfulness. *Id.* at 8, 11–12, 15–18. In response, the Government argues the evidence was more than sufficient for a jury to find Ms. Covington guilty on both counts of conviction and that the Court properly instructed the jury. *See* Resp. Opp'n 6, 15–18.

The Court addresses Ms. Covington's arguments specific to each count below, beginning with Count One.

### A.  Count One, 18 U.S.C. § 242

Ms. Covington argues that the Government failed to present sufficient evidence to prove: (1) W.W. suffered from an objectively serious medical need; (2) that Ms. Covington had actual knowledge of W.W.'s objectively serious medical need; (3) that Ms. Covington acted willfully with a bad purpose; and (4) that Ms. Covington's deliberate indifference caused W.W. to suffer bodily injury. Mot. Acquit. 12. Within her Motion, Ms. Covington also contests three jury instructions that relate to the aforementioned elements. *Id.* at 8, 11–12, 15–18. The Government disagrees on all fronts. *See* Resp. Opp'n 7–19.

The Court will address Ms. Covington's sufficiency and jury instruction arguments as they relate to each element of the § 242 charge, below.

1.  W.W. Suffered From an Objectively Serious Medical Need

Ms. Covington raises two arguments regarding whether W.W. suffered from an objectively serious medical need.  First, she argues that the Court erred by not including Ms. Covington's proposed hindsight instruction.  Mot. Acquit. 8.  Second, Ms. Covington contends that the evidence demonstrated that no one identified an objectively serious medical need at the time.  *Id.* at 8–10.

For the reasons stated below, the Court disagrees.

    *a.  Hindsight Jury Instruction*

Ms. Covington argues that the Court erred by not including, in Instruction 36, language cautioning that the jury should not analyze Ms. Covington's conduct with the benefit of hindsight. Mot. Acquit. 8.  The Government argues there was no legal error in not using Eighth Circuit caselaw to instruct the jury.  Resp. Opp'n 16.

A district court's decision to not give an instruction requested by the criminal defendant "amounts to reversible error only if the proffered instruction: (1) was correct, (2) was not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instruction seriously impaired the defendant's defense."  *United States v. Hager*, 721 F.3d 167, 184 (4th Cir. 2013).

Ms. Covington's argument fails for the same reasons stated from the bench during the December 6, 2021 pre-trial conference and during the December 19, 2024 jury instruction conference.  That is, including the language "with hindsight's perfect vision" was not necessary because the case Ms. Covington relied on in proposing such language, *Lenz v. Wade*, 430 F.3d 991 (8th Cir. 2007), was a civil case from the Eighth Circuit and did not constitute binding authority on the issue, and also because the instruction already called for a finding of "actual knowledge" and thus substantially covered the issue of concern.  Pretrial Hrg. Tr. 13:7–17:20, 27:16–21, ECF

4

No. 340 (December 6, 2021 pre-trial conference); Trial Tr. 2839:10–2840:17, ECF No. 337 (December 19, 2024 jury instruction conference during trial).

### b. Sufficient Evidence of Objectively Serious Medical Need at the Time

At issue next is whether the Government presented sufficient evidence to prove that W.W. was experiencing an objectively serious medical need at the time Ms. Covington was on shift.

"Convicted defendants who challenge the sufficiency of the evidence against them face 'a heavy burden.'" *United States v. Gallagher*, 90 F.4th 182, 190 (4th Cir. 2024). The Court views the evidence in the light most favorable to the prosecution and must "assume the jury resolved all credibility disputes or judgment calls in the government's favor." *Id.* (quoting *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)). The Court must uphold the jury's verdict so long as it is supported by "substantial evidence." *Id.* This evidence is not limited to "evidence presented during the government's case in chief." *Id.* at 189. "[A] reviewing court considering a sufficiency challenge must consider 'all the evidence considered by the jury, both admissible and inadmissible.'" *Id.* (quoting *United States v. Simpson*, 910 F.2d 154, 159 (4th Cir. 1990)).

Ms. Covington argues that the Government failed to present substantial evidence to prove that, at the time Ms. Covington was on shift, W.W. was experiencing an objectively serious medical need. Mot. Acquit. 8–10; Reply 2–3. Ms. Covington's argument rests on the fact that no one acted like W.W.'s need was urgent, no one documented W.W's condition, and no one called a medical emergency. *Id.* She also argues that the evidence is insufficient because no medical provider acted as if there was an objectively serious medical need. *Id.*

The Government notes that the standard is not whether there was a medical emergency or whether anyone acted like W.W.'s issues were emergent, and that it was not required to prove those circumstances. Resp. Opp'n 7–8. Instead, the Government argues that the proper standard

5

is whether W.W. had an objectively serious medical need and, in view of that standard, the jury had ample evidence to conclude beyond a reasonable doubt that W.W. did. *Id.* Lastly, the Government suggests that Ms. Covington mischaracterized the record with respect to whether medical professionals believed W.W. was experiencing an objectively serious medical need. *Id.*

The Government correctly notes that it was not required to prove that there was a medical emergency, only that W.W. was experiencing an objectively serious medical need. Given the testimony of Mr. Southerland, Officer Barnes, Officer Hudson, Officer Moody-Moore, and Officer Pryor, as identified in the Government's brief, the jury was able to credit and weigh those individuals' testimony, along with other evidence provided, in making their assessment. *See* Resp. Opp'n 2–3. This holds even considering testimony proffered by Ms. Covington about whether other medical providers believed W.W. had an objectively serious medical need, as the Court must "assume the jury resolved all credibility disputes or judgment calls in the government's favor." *Gallagher*, 90 F.4th at 190. Therefore, the Court finds, as it previously has, that there is substantial evidence to support a reasonable jury finding that W.W. had an objectively serious medical need. *See, e.g.*, Trial Tr. 772:18–773:4, 775:3–7; 776:23–778:3, ECF No. 331 (Southerland testimony); Trial Tr. 890:5–11, ECF No. 332 (Hudson testimony); Trial Tr. 965:12–21, ECF No. 332 (Moody-Moore testimony); Trial Tr. 1029:3–6, 1030:8–13, ECF No. 332 (Barnes testimony); Trial Tr. 1082:15–24, ECF No. 332 (Pryor testimony).

## 2. Ms. Covington Had Actual Knowledge

Next, Ms. Covington argues that insufficient evidence was presented at trial for the jury to find that she actually knew that W.W. had an objectively serious medical need. Specifically, Ms. Covington argues that she could not have actually known W.W. had a serious medical need, since four separate medical providers did not know. Mot. Acquit. 10–11. She points to the fact that

there was no evidence presented to demonstrate that Ms. Covington had actual knowledge based on either Officer Barnes's and Officer Moody-Moore's limited interaction with W.W. or without an emergency alarm activation. *Id.* Similarly, Ms. Covington contests that any policy "violation" conferred actual knowledge. *Id.*

In response to Ms. Covington's argument, the Government rests on the testimony of Officers Moody-Moore and Barnes, that they told Ms. Covington about W.W.'s objectively serious medical need. Resp. Opp'n 10; s*ee, e.g.*, Trial Tr. 960:21–963:20, 967:25–970:20, ECF No. 332 (Moody-Moore testimony describing her two phone calls to Ms. Covington where she described what was happening to W.W. and asking if there was something they could do); Trial Tr. 1039:18–1040:5, ECF No. 332 (Barnes testimony describing her conversation with Ms. Covington wherein Officer Barnes advised Ms. Covington of W.W.'s symptoms).

As the Court laid out previously, *supra* Part III.A.1.b., the Court must "assume the jury resolved all credibility disputes or judgment calls in the government's favor." *Gallagher*, 90 F.4th at 190. Having concluded that there was substantial evidence of W.W.'s objectively serious medical need, the Court also finds that there was substantial evidence of Ms. Covington's actual knowledge in light of Officer Moody-Moore's and Officer Barnes's testimony. Ms. Covington's argument fails because a reasonable jury may credit Officer Moody-Moore's and Barnes's testimony, even over countervailing evidence and argument presented by Ms. Covington.

### 3. Ms. Covington Acted Willfully

#### a. Willfulness Jury Instruction

Ms. Covington argues that the Court should have given her proposed willfulness instruction. As previously recited, a district court's decision to not give an instruction requested by a criminal defendant "amounts to reversible error only if the proffered instruction: (1) was

correct, (2) was not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instruction seriously impaired the defendant's defense." *Hager*, 721 F.3d at 184.

Ms. Covington argues that that Court should have instructed the jury that willfulness meant "not only to act with a bad or evil purpose, but specifically to act with the intent to deprive a person of a federal right." Mot. Acquit. 12. In particular, Ms. Covington contends that the Court should have ensured that the jury knew it could not convict Ms. Covington for accidentally or negligently causing serious injury or death to W.W. *Id.* Ms. Covington argues that the need for this expanded instruction was illuminated by the fact that the jury asked the Court for a definition of "bad purpose" as it appears in instruction number 38. *Id.*

In response, the Government highlights that the jury was explicitly instructed that negligence or inadvertence does not constitute deliberate indifference. Resp. Opp'n 16–17. Next, the Government points out that Ms. Covington cites no case law requiring the Court to additionally instruct the jury that the Government needed to prove that Ms. Covington had a "bad or evil purpose," as that is not an element of the offense. *Id.*

As an initial matter, the Court agrees that it clearly laid out that "[n]egligence or inadvertence does not constitute deliberate indifference." Jury Instr. No. 36, ECF No. 317. Thus, the jury *did* know that it could not convict Ms. Covington based on a mistake or negligent behavior—or, as counsel for Ms. Covington repeatedly referenced, "an oopsy." Moreover, when drafting the instruction, and after hearing initial argument from counsel, the Court considered the jury instructions in another § 242 case, *United States v. Legins*, 3:19cr104-DJN,[2] specifically jury

---

[2] The Court notes that counsel for Tonya Farley, Ms. Covington's co-defendant, specifically point the Court to this case as an example of a satisfactory § 242 jury instruction. *See* Pretrial Jury Instr. Hrg. Tr. 25:14–25, ECF No. 340.

instruction number 27, as well as the jury instructions underpinning *United States v. Cowden*, 882 F.3d 464, 474 (4th Cir. 2018). Thereafter, the Court incorporated specific intent language modeled after the instruction from *Legins* to specify that the Government had to prove that Ms. Covington acted with a "bad purpose of doing what the Constitution forbids." *Compare* Jury Instr. No. 38, ECF No. 317, *with* Instr. No. 27, *United States v. Legins*, 3:19cr104-DJN (Feb. 4, 2020), ECF No. 98.

The language underpinning Ms. Covington's requested Modern Federal Jury Instruction-Criminal ¶ 17.01, Instruction 17-6, derives from out-of-circuit cases and *Screws v. United States*, 325 U.S. 91 (1945). The *Screws* Court discussed "willfulness" at length and concluded:

> But in view of our construction of the word "willfully" the jury should have been further instructed that it was not sufficient that petitioners had a generally bad purpose. To convict it was necessary for them to find that petitioners had the purpose to deprive the prisoner of a constitutional right, e. g. the right to be tried by a court rather than by ordeal.

*Id.* at 107. This passage highlights that the important element is the specific intent to do something the law or constitution forbids. This Court made that clear in the instructions issued in this case. *See* Jury Instr. No. 38 ("A person acts 'willfully' when that person acts voluntarily and intentionally, with the specific intent to do something that the law forbids, or with the specific intent to fail to do something the law requires . . . . It is necessary, however, for the Government to prove beyond a reasonable doubt that Ms. Covington acted with the bad purpose of doing what the Constitution forbids."). No binding case law exists to compel the Court to include "evil purpose" as part of the definition of "willfulness," nor is that language essential to the instruction. Therefore, the Court finds that its instruction on willfulness comports with current Fourth Circuit and Supreme Court precedent and thus was correct and did not otherwise "impair [Ms. Covington's] defense." *Hager*, 721 F.3d at 184.

b. *Evidence of Willfulness*

Ms. Covington next argues that there was no evidence presented that she acted with a bad purpose, regardless of the willfulness standard utilized. Mot. Acquit. 13. Ms. Covington highlights her stellar reputation, the fact that she had no involvement placing W.W. in suicide watch, and that she had no prior interactions with W.W. *Id.* at 13–14. She also challenges the Government's ability to satisfy its burden of proof absent evidence that Ms. Covington "wanted to harm" W.W., particularly given that § 242 is technically a capital offense (the Government's decision to not seek the death penalty in this case notwithstanding), and that the Government endeavored to "lower[] their standard of proof" in that regard by way of its closing arguments. *Id.* at 13.

The Government disagrees with Ms. Covington's portrayal of these issues. First, the Government argues that it faced no requirement to establish that Ms. Covington had any personal animus toward W.W.; rather, the only *mens rea* requirement was for the Government to prove that Ms. Covington had the specific intent to do something that law forbids. Resp. Opp'n 11. *Id.* Next, the Government contends that Ms. Covington's extensive experience cuts in favor of the Government's position because Ms. Covington should have known that she needed to act. *Id.* The Government also notes that the indifference of others is irrelevant to Ms. Covington's culpability and to the actions that she took or failed to take. *Id.* at 11–12.

More importantly, the Government submits that it demonstrated that Ms. Covington acted willfully by presenting evidence of: (1) BOP policy; (2) that the policies applied to Ms. Covington; and (3) that Ms. Covington attempted to cover up her role by lying to federal investigators. Resp. Opp'n 10.

10

The Court agrees that the Government was not required to prove personal animus against W.W. or that Ms. Covington intended to harm W.W.  As described above, *supra* Part III.A.3.a, the Government was required to prove that Ms. Covington acted with a "bad purpose of doing what the Constitution forbids."  Jury Instr. No. 38; *see also id.* ("A person acts 'willfully' when that person acts voluntarily and intentionally, with the specific intent to do something that the law forbids, or with the specific intent to fail to do something the law requires.").

The Court finds that there was sufficient evidence for the jury to find that Ms. Covington acted willfully.  Namely, the jury was free to believe the Government's theory that BOP policy dictated Ms. Covington take certain actions with respect to W.W., that she knew and disregarded such policies, and that Ms. Covington lied to federal agents to cover up the role she played.  *See* Gov't Ex. 13 at 3 ("The Operations Lieutenant will contact the Medical Officer on call" after hours and when notified about an inmate who required immediate medical assistance) (on file with the Court); Gov't Ex. 26A–P (Special Agent Whitney's interview with Ms. Covington) (on file with the Court).  Therefore, Ms. Covington's arguments fall within the province of the jury as they involve assessing the credibility of the witnesses and making certain judgment calls.  As explained previously, at this procedural posture, the Court must "assume the jury resolved all credibility disputes or judgment calls in the government's favor." *Gallagher*, 90 F.4th at 190.

### 4. Ms. Covington's Actions Resulted in W.W. Suffering Bodily Harm

#### a. Proximate Cause Jury Instruction

Ms. Covington argues that the Court erred by not including her requested proximate cause jury instruction with respect to the final element of § 242.  Mot. Acquit. 15–18.

This argument fails for the same reasons stated from the bench during the December 6, 2021 pre-trial conference and during the trial.  *See* Pretrial Hrg. Tr. 28:7–36:24, ECF No. 340

(December 6, 2021 pre-trial conference addressing jury instructions and the Court's rejection of the Defendants' proposed proximate causation standard); Trial Tr. 2812:15–2814:25, ECF No. 337 (argument on Rule 29 motions, during which the Court and counsel re-engaged over the lack of precedential support in the Fourth Circuit, and the majority of other circuits, for imposing a proximate causation standard on the § 242 charge); *id.* at 2857:2–12 (final jury instruction conference, during which the Court overruled Ms. Covington's objection to the Court's final jury instructions' omission of her proposed proximate cause instruction, D-16).   That is, the Court determined that (1) no Supreme Court or Fourth Circuit precedent required the imposition of a proximate causation standard in the § 242 context, and (2) binding Supreme Court and Fourth Circuit authority pertaining to 18 U.S.C. § 841's analogous "results from" language instead strongly supported application of a but-for standard in the § 242 context.  *See Burrage v. United States*, 571 U.S. 204, 208, 210, 218–19 (2014) (finding that but-for causation is the minimum requirement where a statute contains a "result[s/ed/ing] in" penalty enhancement, but stopping short of answering whether "resulted in" language carries with it a proximate causation (foreseeability) requirement); *United States v. Alvarado*, 816 F.3d 242, 244, 249–50 (4th Cir. 2016) (affirming as still good law the pre-*Burrage* case *United States v. Patterson*, 38 F.3d 139 (4th Cir. 1994), in which the Fourt Circuit found that the Congressional intent of § 841's "resulted in" language was clear in limiting causation to but-for, only).  Other Circuits post-*Burrage* have similarly rejected the imposition of a proximate cause standard in the context of § 841.  *See United States v. Kilmartin*, 944 F.3d 315, 326–29 (1st Cir. 2019);[3] *United States v. Thompson,* 945 F.3d

---

[3] Contrary to the First Circuit's causation position in *Kilmartin*, a § 841 case, Ms. Covington argued that the Court should utilize the Defendants' proposed instruction modeled after a pre-*Burrage* First Circuit case, *United States v. Marler*, 756 F.2d 206 (1st Cir. 1985), that affirmed the application of a proximate cause standard in a § 242 civil rights prosecution.  However, Ms. Covington never articulated whether or why this case remained good law post-*Burrage*.  *See* Pretrial Hrg. Tr. 30:5–10; Trial Tr. 2812:15–2814:25, 2857:2–12, ECF No. 337.

340, 345–46 (5th Cir. 2019); *United States v. Jeffries*, 958 F.3d 517, 524 (6th Cir. 2020); *United States v. Burkholder*, 816 F.3d 607, 618–21 (10th Cir. 2016). And, most notably, the Ninth Circuit recently and explicitly found that "the 'bodily injury [results from]' element of § 242 is similar to a comparable provision found in 21 U.S.C. § 841," and thus that pre-*Burrage* § 841 caselaw holding that "results from" requires "but-for" causation alone applied with equal force when determining the causation standard appropriate for § 242. *United States v. Gonzalez*, 906 F.3d 784, 799 (9th Cir. 2018).[4]

The Court is not persuaded by Ms. Covington's arguments that it should have adopted the reasoning of pre-*Burrage*, out-of-circuit cases or the position of the District Court for the Western District of Kentucky, *see* Mot. Acquit. 15–18, and in so doing break from Fourth Circuit and Supreme Court precedent establishing but-for causation as the appropriate standard in the context of a "results from" penalty provision. Because the proposed proximate cause language was not clearly correct as a matter of law, the Court's refusal to give the instruction is not grounds for acquittal. *Hager*, 721 F.3d at 184.

### b. Evidence of Causation

Ms. Covington argues that the Government failed to satisfy its burden to prove that Ms. Covington's deliberate indifference caused W.W. to suffer bodily injury. First, Ms. Covington argues that there was no evidence that W.W. suffered any bodily injury while she was on shift. Mot. Acquit. 18–19. Second, Ms. Covington claims that the Government's theory—that Ms. Covington should have sent W.W. to the hospital—failed because there was no evidence that

---

[4] In another post-*Burrage* case, the Second Circuit found that the evidence below was sufficient to sustain a § 242 conviction where the district court instructed the jury on *both* but-for and proximate cause; the panel explicitly declined to consider whether the proximate cause instruction was necessary, however. *United States v. Coll*, 762 F. App'x 56, 60, n.2 (2d Cir. 2019); *see also id*. at 59 n.1 (assuming without deciding, based on agreement of the parties, that *Burrage* controlled with respect to § 242).

W.W.'s condition warranted going to the hospital. *Id.* at 19–20.  Lastly, per the Motion to Acquit, the Government fell short because it did not identify the specific injury Ms. Covington caused. *Id.* at 20.  Related to her final argument, Ms. Covington again raises concerns about prosecutorial decision making and who the government decided to charge. *Id.* at 20–21.  Specifically, Ms. Covington argues that she can't be held accountable for the actions of others after she left.  Reply 5.

Disagreeing, the Government highlights that it introduced ample evidence that W.W. sustained bodily injuries during Ms. Covington's shift, after she learned about W.W.'s symptoms. Resp. Opp'n 12–13.  The Government also presented evidence that Ms. Covington should have sent W.W. to the hospital based on BOP policy. *Id.* at 13–14.  Specifically, the evidence showed that BOP policy requires an inmate be sent to the hospital whenever the inmate requires hospitalization, not only in life-threatening emergencies. *Id.*  Finally, the Government reiterated that charging decisions have no place at trial and should not provide a basis now to disrupt the jury's verdict. *Id.* at 14–15.

The Court agrees that questioning prosecutor's charging decisions is inappropriate in this context, as it is irrelevant to Ms. Covington's culpability.  Federal Rule of Evidence 401 describes relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence," and Federal Rule of Evidence 402 states that "irrelevant evidence is not admissible."  In *United States v. Benson*, the Fourth Circuit observed that, pursuant to Federal Rules of Evidence 401 and 402, charging decisions are "irrelevant because they often take 'into consideration the availability of prosecutorial resources, alternative priorities, the expectation of prosecution by other authorities, or any number of other valid discretionary reasons.'"  957 F.3d 218, 236–37 (4th Cir. 2020) (quoting *United States v. Bingham*, 653 F.3d 983, 999 (9th Cir. 2011)).

14

With respect to the remainder of Ms. Covington's arguments on this element, the Court must find, once again, that "the jury resolved all credibility disputes or judgment calls in the [G]overnment's favor." *Gallagher*, 90 F.4th at 190.  The Court instructed, in relevant part, that "Bodily injury means injury, no matter how temporary.  Bodily injury includes physical pain as well as any burn, cut, abrasion, bruise, disfigurement, illness, or impairment of the function of a bodily member, organ, or mental faculty."  Jury Instr. No. 39.  Based on the testimony provided and evidence submitted to the jury, the Court finds that there was sufficient evidence for the jury to find that Ms. Covington's deliberate indifference caused W.W. bodily injury while Ms. Covington was on shift and after she had been notified.  Specifically, Mr. Southerland testified that W.W. was falling throughout the night, Officer Moody-Moore testified that she observed W.W. fall and hit his head on the toilet seat, and Assistant Warden Wilson testified that it was appropriate for the Operations Lieutenant to contact the on-call Medical Officer when an inmate required immediate medical assistance.  *See, e.g.*, Trial Tr. 965:12–21, ECF No. 332 (Moody-Moore testimony); Trial Tr. 775:3–7, 780:15–25, ECF No. 331 (Southerland testimony); Trial Tr. 613:6–614:3, ECF No. 331 (Wilson testimony that when an inmate needs to go to the hospital "[t]he supervisor will call the on-call doctor or physician to let them know what's going on and get their buy-in on it first"); *see also* Gov't Ex. 13 at 3 (on file with the Court) ("The Operations Lieutenant will contact the Medical Officer on call" after hours and when notified about an inmate who required immediate medical assistance).  Based on the evidence presented, the Court will not disturb the jury's verdict.

As stated above, the Court finds that the jury's verdict on Count One is supported by substantial evidence, and the jury was instructed properly on the law.  Therefore, the Court will deny Ms. Covington's Motion for Acquittal as it relates to Count One.

**B. Count Six, 18 U.S.C. § 1001**

Ms. Covington also urges the Court to grant her Motion for Acquittal on Count Six, which charged her with making false statements to Special Agent Whitney. Mot. Acquit. 21. In particular, Ms. Covington argues that the Government failed to present evidence of her willfulness with respect to any false statements or that her statements were material. *See id.* at 21–24. In response, the Government asserts that it presented sufficient evidence that the jury could, and did in fact, find Ms. Covington guilty of Count Six. Resp. Opp'n 15–16. The Government also notes that the Court may not, *inter alia*, weigh the evidence or assess the credibility of witnesses. *Id.* at 15. The Court reviews each of Ms. Covington's arguments in turn, below.

1. Evidence of Willfulness

Ms. Covington maintains that she never lied to Special Agent Whitney and that she had no reason to lie. Mot. Acquit. 21–22. Ms. Covington argues that there was no evidence of willfulness presented to the jury beyond the fact that her responses were inconsistent with Officer Moody-Moore's, which does not amount to willfulness. *Id.* at 22.

The Government correctly points out that the Court cannot weigh the evidence, draw inferences from the facts, or assess the credibility of witnesses. *See* Resp. Opp'n 15. The argument raised by Ms. Covington revolves around the respective credibility of Ms. Covington and Officer Moody-Moore. The Government further notes that Officer Moody-Moore was only one of five witnesses who testified about W.W.'s symptoms, and she was one of two witnesses who informed Ms. Covington about the symptoms W.W. was experiencing. *Id.* at 15 n.5; *see, e.g.*, Trial Tr. 967:35–970:20, ECF No. 332 (Moody-Moore testimony informing Ms. Covington of W.W.'s symptoms); *id.* at 1039:18–1040:5 (Barnes testimony regarding the same); *id.* at 1082:15–24 (Pryor testimony regarding her observations of W.W.'s symptoms during Ms. Covington's shift).

Therefore, Ms. Covington's willfulness is not simply to be determined based on whether Ms. Covington's responses were inconsistent with Officer Moody-Moore's.  The jury may well have considered the testimony of Officers Barnes, Moody-Moore, and Pryor, among others, in determining that Ms. Covington acted willfully.  Thus, Ms. Covington's argument fails because the Court must "assume the jury resolved all credibility disputes or judgment calls in the government's favor."  *Gallagher*, 90 F.4th at 190.

### 2. Materiality

Lastly, Ms. Covington argues that the Government failed to present a "shred of factual evidence" that Ms. Covington's alleged false statements were material.  Mot. Acquit. 22–24.

"A statement is material if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed."  *United States v. Smith*, 54 F.4th 755, 769 (4th Cir. 2022) ("[I]t bears emphasizing that a false statement is material under § 1001 when it has 'a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed.'" (quoting *United States v. Hamilton*, 699 F.3d 356, 362 (4th Cir. 2012)).  Before applying the aforementioned legal standard, two factual findings must be made:  (1) what was "the defendant's relevant statement," and (2) what was "the decision the government agency was trying to make."  *Id.* at 771 (quoting *United States v. Gaudin*, 515 U.S. 506, 512 (1995)).   Ultimately, it is irrelevant "whether the false statement *actually influenced* the [agency's] decision-making process."  *Id.* at 769 (quoting *United States v. Hamilton*, 699 F.3d 356, 362 (4th Cir. 2012)).

With respect to § 1001, "the investigation of wrongdoing is a proper governmental function; and since it is the very purpose of an investigation to uncover the truth, any falsehood relating to the subject of the investigation perverts that function."  *Id.* at 772 (quoting *Brogan v.*

*United States*, 522 U.S. 398, 402 (1998)).  In *United States v. Smith*, 54 F.4th 755 (4th Cir. 2022), the Fourth Circuit found that "[the defendant's] denials that he discussed the very plans which prompted the [agency]'s inquiry, if believed, 'were capable of influencing the direction of the investigation.'"  *Id.* at 769 (quoting *United States v. Barringer*, 25 F.4th 239, 251 (4th Cir. 2022)); *see id.* at 772 (concluding that the defendant's answer, "though revealing only his untruthfulness[,] could alter the [agency's] decision-making"); *see also United States v. Fondren*, 417 F. App'x 327, 335 (4th Cir. 2011) (finding "there was ample circumstantial evidence from which the jury could have inferred the materiality of the false statements").  The court reasoned that the "misrepresentations, under normal circumstances, could cause [agency] agents to re-direct their investigation to another suspect, question their informant differently or more fully, or perhaps close the investigation altogether." *Id.* (quoting *United States v. McBane*, 433 F.3d 344, 352 (3d Cir. 2005)).

Ms. Covington argues that the Government did not present any evidence that Ms. Covington's statements were material.  Mot. Acquit. 23–24.  In particular, Ms. Covington argues that the inference that Ms. Covington's statements could have influenced an agency's decision still had to be tethered to some sort of factual evidence presented by the Government, and that it ultimately was not. *Id.*  Ms. Covington also points out that it is inappropriate to assume that jurors knew and understood how federal investigations work or what influences an investigation. *Id.*  Further, Ms. Covington contends that the existence of an investigation alone does not provide any basis determining the false statements influenced Special Agent Whitney's or OIG's actions. Reply 7–8.  Finally, Ms. Covington questions what specific decision the agency was trying to make, that was or could have been impacted by Ms. Covington's statements.[5]  *See* Reply 8.

---

[5] There is no question that the false statements were identified during trial.  *See* Reply 8.

The Government counters that there is no case law that requires it to ask a particular question to prove materiality. Resp. Opp'n 15–16. Moreover, the Government does not need to show that the false statement *actually* impacted the investigation, only that it was capable of influencing a decision or action of the agency. *Id.* at 16.

The Court finds that there was substantial evidence presented for a reasonable jury to conclude that Ms. Covington's false statements had "a natural tendency to influence, or [were] capable of influencing, the decision-making body to which [they were] addressed," here OIG. *Smith*, 54 F.4th at 769. Ms. Covington denied that any correctional officer told her about W.W.'s symptoms and asserted that officers instead told her W.W. was walking around, listening to music, and doing push-ups, *but see* Trial Tr. 967:35–970:20, ECF No. 332 (Moody-Moore testimony regarding how she informed Ms. Covington of W.W.'s symptoms, none of which included listening to music of doing push-ups); *id.* at 1039:18–1040:9 (Barnes testimony regarding how he informed Ms. Covington of W.W.'s symptoms, none of which included listening to music or doing push-ups), and lastly Ms. Covington denied that she asked Moody-Moore to put her down for having completed her rounds, *but see id.* at 971:17–972:5 (Moody-Moore testimony that Ms. Covington "did ask [Moody-Moore] to put her in the system for a round"). The materiality of these misrepresentations may, as in *Smith*, be inferred, given their ability to "cause [OIG] agents to re-direct their investigation to another suspect, question their informant differently or more fully, or perhaps close the investigation altogether." 54 F.4th at 769 (quoting *McBane*, 433 F.3d at 352). Ms. Covington's clear preference aside, the Government was not in fact required to identify a specific decision impacted—merely that the misrepresentations had "a natural tendency to influence, or [were] capable of influencing" OIG decision-making. *Smith*, 54 F.4th at 769. Special Agent Whitney was investigating the cause and circumstances surrounding W.W.'s death. *See*

Reply 7; Resp. Opp'n 16.  Therefore, Ms. Covington's "false statements . . . weren't harmless lies told in a vacuum; they related to other [possible] subjects of [OIG's] investigation," *Smith*, 54 F.4th at 772, e.g., Officers Moody-Moore and Barnes, insofar as Ms. Covington's statements called into question the truthfulness of the actions reported by other witnesses and could therefore have redirected the investigation towards those individuals, *see, e.g.*, Trial Tr. 1404:6–1405:18; 1414:11–1416:7, ECF No. 333 (Whitney testimony regarding her interview of Ms. Covington, at which time Ms. Covington denied that she spoke with Officer Barnes and denied hearing about W.W.'s symptoms from Officer Moody-Moore).

Because "[w]hen statements are aimed at misdirecting agents and their investigation, even if they miss spectacularly or stand absolutely no chance of succeeding, they satisfy the materiality requirement of 18 U.S.C. § 1001," *Smith*, 54 F.4th at 772 (quoting *United States v. Lupton*, 620 F.3d 790, 806–07 (7th Cir. 2010)), and because such misdirecting statements were presented at trial, the Court finds that there was sufficient evidence introduced, such that a "jury could have inferred the materiality of the false statements." *Fondren*, 417 F. App'x at 335–36; *see also Smith*, 54 F.4th at 769.   Acquittal is therefore improper as to Count Six.

### IV. CONCLUSION

For the reasons stated above, the Court finds that there was sufficient evidence presented at trial for a reasonable jury to find Ms. Covington guilty of Counts One and Six.  Therefore, Ms. Covington's Motion for Acquittal is denied.

/s/

Roderick C. Young
United States District Judge

Date: May 19, 2025
Richmond, Virginia